| | AUSA: | Ryan A. Particka | Telephone: | (313) 348-8178 |
|---|---|---|---|---|
| AO 91 (Rev. 11/11)  Criminal Complaint | Special Agent: | Julia MacBeth | Telephone: | (313) 919-1373 |

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
    v.

**SAMUEL GEORGE BAKER**

Case: 2:20−mj−30299
Assigned To : Unassigned
Assign. Date : 8/17/2020
IN RE: SEALED MATTER (MAW)


## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 2020 - Present_____ in the county of _____Oakland_____ in the
_____Eastern_____ District of _____Michigan_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1341 | Mail Fraud |
| 18 U.S.C. §1028A | Aggravated Identity Theft |
| 18 U.S.C. §1029 | Fraud and Related Activity in Connection with Access Devices |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Julia MacBeth, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date:  8/17/2020

City and state:  Detroit, MI

*Judge's signature*

Elizabeth A. Stafford, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Julia MacBeth, Special Agent for the Federal Bureau of Investigations, being duly sworn, state as follows:

## INTRODUCTION AND AFFIANT BACKGROUND

1. I am a Special Agent of the FBI and, as such, an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

2. I have been employed by the FBI since May 2016. Prior to joining the FBI, I was a Federal Air Marshal from December 2010 until April 2016. I earned a Bachelor's degree in criminal justice from Western Michigan University and a Master's degree in criminal justice from Tiffin University. I have received law enforcement training at the Federal Law Enforcement Training Center (FLETC) and the FBI Academy. During my employment with the FBI, I have investigated federal crimes involving mail fraud, wire fraud, money laundering, investment fraud, identity theft, and various other criminal matters. At all times during the investigation described in this affidavit, I have been acting in an official capacity as a Special Agent of the FBI.

## PURPOSE OF AFFIDAVIT

3.  This affidavit is made in support of a criminal complaint and arrest warrant for SAMUEL GEORGE BAKER of violations of Title 18, U.S.C. §1341 (Mail Fraud); Title 18, U.S.C. §1029 (Fraud and Related Activity in Connection with Access Devices); and Title 18, U.S.C. §1028A (Aggravated Identity Theft).

4.  Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that BAKER, a resident of the Eastern District of Michigan, is responsible for knowingly possessing and using fraudulently-obtained access devices containing victims' unemployment benefits to execute a scheme to defraud within the Eastern District of Michigan.   There is also probable cause to believe that this scheme involved the use of mail to execute the fraud.

5.  This affidavit is submitted for securing a criminal complaint and arrest warrant; therefore, this affidavit does not contain every fact that I have learned during the course of the investigation.  I have only set forth the facts necessary to establish probable cause to believe that BAKER violated the statutes identified above. The information contained in this affidavit is based upon my personal knowledge, training and experience, as well as the

combined knowledge, training and experience of other law enforcement officers and agents with whom I have had discussions.

6. Title 18, U.S.C. § 1341 criminalizes the use of mail for the purpose of executing or attempting to execute any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

7. Title 18, U.S.C. §1029(a)(2) criminalizes using one or more unauthorized access devices during any one-year period to obtain anything of value aggregating $1,000 or more. An access device is defined as any card, account number, personal identification number, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or other things of value, or can be used to initiate a transfer of funds. An unauthorized access device means any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud.

8. Title 18, U.S.C. §1028A criminalizes knowingly transferring, possessing, or using, without lawful authority, a means of identification of another person during the course of certain other felony violations, to include the above described mail fraud.

## **BACKGROUND**

9.  This joint investigation conducted by the FBI, the Department of Labor-Office of Inspector General, and the Bloomfield Township Police Department has revealed, as explained in more detail below, that SAMUEL GEORGE BAKER, is executing a scheme to defraud by fraudulently obtaining unemployment benefits issued by the State of Pennsylvania in various victims' names on prepaid debit cards and then using the cards to make cash withdrawals. BAKER caused the prepaid benefit cards to be sent, via mail, to his residence and various other residences in the Eastern District of Michigan. In addition, BAKER furthered the fraud by applying for and receiving unemployment benefits from the State of Michigan by means of falsifying social security numbers and other information provided in the application(s).

10. The federal government is currently providing substantial assistance to the States through the Families First Coronavirus Response Act (FFCRA), which became law on March 18, 2020, and provides additional flexibility for State unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic. Additionally, the Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law on March 27, 2020, and further expands the ability of the States to provide

4

unemployment insurance (UI) for many workers impacted by the COVID-19 pandemic, including workers who are not ordinarily eligible for unemployment benefits. The Federal Pandemic Unemployment Compensation (FPUC) program was created under the aforementioned statutes and allowed eligible individuals who are collecting certain UI benefits, including regular unemployment compensation, to receive an additional $600 in federal benefits per week for weeks of unemployment ending on or before July 31, 2020. Additionally, the Pandemic Emergency Unemployment Compensation (PEUC) program has been created and allows those who have exhausted benefits under regular unemployment compensation or other programs to receive up to 13 weeks of additional federally funded benefits.

11. Normally (in the absence of fraud), an unemployed worker initiates an unemployment claim. Currently, the overwhelming majority of unemployment claims are filed online through state-organized websites. In most cases, in order to be eligible for unemployment benefits, the worker must demonstrate a certain level of earnings in several quarters immediately preceding the application. The amount of unemployment benefits that an unemployment claimant might be eligible for depends on a variety of

factors, including, but not limited to, the length of his or her previous employment and the amount of wages he or she earned.

12. One way in which UI benefits are provided in the State of Pennsylvania to a claimant is through the use of a prepaid debit card, issued by US Bank and sent to the claimant through the mail. In the State of Michigan, the prepaid cards are issued by Bank of America, but are also mailed to the claimant. The unemployment benefits are loaded onto the debit card electronically, and additional benefits are loaded onto the card electronically every two weeks. Alternatively, a worker can provide a bank routing number and bank account in which to have their unemployment benefits directly deposited electronically. Additional benefits are then deposited into the account electronically every two weeks.

13. In an effort to prevent and otherwise inhibit fraud, data is captured surrounding the interaction between an individual and the unemployment benefits system. Each time a claim is accessed in the system, it creates a digital footprint of sorts. Some of the data that is collected includes the dates, times, Internet Protocol (IP) address, and Media Access Control (MAC) address associated with the device accessing the claim. This information is tied to the user-entered information captured to facilitate the claim (i.e. name, address, social security number, BOA or other bank account numbers, bank

6

routing numbers, etc.).  It is through the analysis of this data that the investigating agents can identify fraudulent trends and tendencies associated with certain claims.

## PROBABLE CAUSE

### State of Pennsylvania Unemployment Claims

14. In July 2020, a Fraud Investigator for Independent Bank in Michigan contacted the FBI to report ongoing suspicious activity. According to the bank investigator, an unidentified suspect (later identified by law enforcement as BAKER) had been making large daily cash withdrawals at Independent Bank Automated Teller Machines (ATMs) throughout Oakland County, Michigan. At that time, BAKER was using the same thirteen (13) US Bank and Card.com prepaid debit cards to make the withdrawals, and was doing so daily using Independent Bank drive-up ATMs, either prior to the bank branches opening or after the bank branches had closed. The thirteen cards were typically used to make two $500 withdrawals each ($1,000 per card, each day). By the end of July 2020, Independent Bank had identified 28 debit cards used by BAKER routinely.  One of these cards commonly used by BAKER was a US Bank card ending in 5223.

15. Independent Bank provided the FBI still photos taken from the closed-circuit television (CCTV) cameras located on the ATMs. BAKER was almost

always observed driving a new 2020 black Dodge Durango. Also, BAKER commonly wore a camouflage cap and black medical-style facemask.

16. On July 17, 2020, the FBI referred these suspicious incidents to a Bloomfield Township Police Department Detective assigned as an FBI Detroit Metro Identity Theft and Financial Crimes Task Force Officer (TFO). This FBI TFO was able to positively identify the previously-unknown suspect as BAKER through the use of surveillance techniques and with the assistance of other Bloomfield Township Police Officers. During a routine traffic stop made after BAKER made withdrawals at the Bloomfield Hills Independent Bank branch ATM, BAKER provided the officer with a State of Georgia driver's license in the name of SAMUEL BAKER. The Michigan license plate on the black Dodge Durango BAKER was driving was EDM 9908, which is a registered in the State of Michigan to BAKER at his residence, 17830 Violet Dr, Southfield, Michigan.

17. Further investigation revealed that several of the cards used to make withdrawals by BAKER were issued in the names of various individuals on behalf of the State of Pennsylvania for the purpose of receiving state and federal unemployment benefits.

18. US Bank records revealed that twelve of the twenty-eight cards that had been identified as cards used by BAKER to make cash withdrawals, were

8

cards that had been issued by US Bank for the purpose of receiving Pennsylvania unemployment benefit payouts. Included in the twelve cards issued by the State of Pennsylvania was the card ending 5223. The total amount of state and federal unemployment funds issued on these twelve cards totaled approximately $158,911.00. As of August 10, 2020, approximately $147,061.00 of the total amount issued on the cards had been withdrawn via ATM. It is believed that the remainder of the 28 cards known to be used by BAKER to make withdrawals also contain(ed) unemployment benefits; however, that aspect of the investigation remains ongoing. Based upon conversations with Independent Bank Investigators, it is estimated that the total available balance across all of the cards was likely above $300,000.

19. According to records provided by US Bank, the debit card ending in 5223, as referenced above, was issued in the name of a victim, herein known as D.B. Further, all deposits into the account were from the Pennsylvania Department of Treasury and appeared to be the result of state and federal unemployment benefit payments. This card was delivered, via mail, to BAKER's Violet Drive, Southfield residence.

20. The Department of Labor provided records of the unemployment benefits claim filed in the name of D.B. in the State of Pennsylvania. The claim, filed on June 25, 2020, listed D.B.'s residential address as 755 Greenhills Road,

Irwin, Pennsylvania, with a mailing address of 17830 Violet Drive,

Southfield, Michigan. The claim requested that benefit payments be issued

via debit card. The phone number submitted on the application was a 248-

area code phone number, which is an area code used in Oakland County,

Michigan.

21. Records provided by the Department of Labor for the unemployment

benefits claim in the State of Pennsylvania for D.B., revealed the following

payouts were made on a US Bank card issued for D.B.:

| Date | Amount | Source of Funds |
|------|--------|-----------------|
| 6/26/2020 | $2,925.00 | State of PA Unemployment Funds |
| 6/26/2020 | $7,200.00 | Cares Act Federal Funds |
| 6/29/2020 | $195.00 | State of PA Unemployment Funds |
| 6/29/2020 | $600.00 | Cares Act Federal Funds |
| **Total** | **$10,920.00** | |

22. According to US Bank, a total of $10,889.00 was withdrawn from the debit

card ending 5333 between July 14, 2020 and July 22, 2020.

23. CCTV footage provided by Independent Bank, recorded on July 17, 2020, at

approximately 5:58 A.M. from the Farmington Hills Independent Bank

branch shows BAKER conducting transactions in the same black facemask

and camouflage hat, as he was wearing when previously identified.

Consistent with this are US Bank records indicating that two withdrawals were made on the debit card ending in 5223 for $500.00 each on July 17, 2020 at approximately 5:58 A.M. from an Independent Bank branch located in Farmington Hills.

24. The FBI contacted victim D.B., who stated that he/she never filed an unemployment claim nor had anyone file on his/her behalf in the State of Pennsylvania. D.B., a resident of Virginia, had not lived in the State of Pennsylvania for many years. D.B. had been employed since the start of the pandemic and had no reason to file for unemployment benefits. D.B. had not received a debit card containing unemployment benefits and therefore had never made any cash withdrawals on any such debit card. D.B. verified that it was his/her correct social security number and date of birth used to file the claim made in Pennsylvania.

25. Records and information obtained by the FBI indicate that since the start of this scheme to defraud, BAKER purchased a rare Rolex watch for $44,500 cash, all in denominations smaller than $100 bills from a Southfield pawn shop in August 2020. This is significant because according to the Independent Bank Investigator, most bank ATMs, to include Independent Bank's ATMs, do not issue $100 bills. In addition, in July 2020, BAKER

made two cash payments for approximately $53,000 and $17,700 to the same pawnshop for the purpose of paying off debt obligations.

<u>State of Michigan Unemployment Claims</u>

26. A Special Agent with the Department of Labor through the use of records received from the State of Michigan Unemployment Agency, identified three unemployment benefit claims, made in the State of Michigan, filed by BAKER in his true name and date of birth. However, on at least two of these claims, BAKER falsified the claims by using fraudulent social security numbers, addresses and driver's licenses.

27. According to State of Michigan Unemployment Agency records, BAKER filed the first State of Michigan unemployment benefit claim on or around May 8, 2020, using his true social security number and address, however attached to the claim was an altered Michigan driver's license. The fictious driver's license contained an expired Michigan driver's license number previously issued to BAKER, which expired in July 2015. BAKER does not have a current driver's license in the State of Michigan. This driver's license contained a photo of BAKER and his Violet Drive, Southfield address. The benefits for this claim were requested to be issued via direct deposit to a PNC Bank account.

28. According to State of Michigan Unemployment Agency records, a second claim was filed by BAKER on or around May 15, 2020, which listed a fake social security number and an address of 560 Alter Drive, Detroit, Michigan. Digitally attached to the application was another fraudulent driver's license, containing the same driver's license number as BAKER's expired license; however, the photo was that of a different unknown person. The benefits for this claim were requested to be issued via a prepaid Bank of America debit card. Additionally, submitted with this claim was a digitally-manufactured social security card containing a fake social security number.

29. According to State of Michigan Unemployment Agency records, a third claim was filed by BAKER on or around May 15, 2020, which listed a fake social security number and an address of 25029 Champlaign Drive, Southfield, Michigan. Also, digitally attached to the application was a fraudulent driver's license containing the same expired driver's license number previously used by BAKER in the first claim; however, the photo was that of a different unknown person. The benefits for this claim were requested to be issued via a prepaid Bank of America debit card. Additionally, submitted with this claim was a digitally-manufactured social security card containing a fake social security number.

13

30. In all three claims, the fraudulent driver's licenses all contained the same driver's license number, name, date of birth, document discriminator number, and signature, which appears to be a digitally made signature. The licenses all appear to be digitally manipulated.

31. The information captured while accessing the unemployment system for these claims in the State of Michigan, indicates all three of these claims were consistently accessed from the same model iPhone.

32. According to the Michigan Unemployment Agency, if the claimant chooses to have unemployment benefits deposited onto a debit card, that card is provided by Bank of America and is also mailed the next business day following the date the claim is filed. Two of the claims filed by BAKER were issued benefits via Bank of America debit cards.

33. The benefits received by BAKER for the three fraudulent State of Michigan unemployment claims totaled $37,760.

## <u>CONCLUSION</u>

34. Based on the investigation thus far, including the facts set forth above, your affiant submits that there is probable cause to believe that SAMUEL GEORGE BAKER, has executed a scheme to defraud and while doing so knowingly possessed and used, without lawful authority, a means of identification of another person.  In addition, your affiant submits that there

is probable cause to believe that BAKER, within a one-year period, used one

or more unauthorized access devices to obtain more than $1,000, and did so

knowingly and with intent to defraud. There is also probable cause to believe

that the mail was used to execute the scheme to defraud.

35. Therefore, your affiant believes that probable cause exists that SAMUEL

GEORGE BAKER violated Title 18, U.S.C. §1341 (Mail Fraud); Title 18,

U.S.C. §1028A (Aggravated Identity Theft); and Title 18, U.S.C. §1029(a)(2)

(Fraud and Related Activity in Connection with Access Devices).

Respectfully submitted,

Julia MacBeth
Special Agent
Federal Bureau of Investigation

Date:  August 17, 2020

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Elizabeth A. Stafford
United States Magistrate Judge